LOCAL 553, INTERNATIONAL BROTH-
ERHOOD OF TEAMSTERS, CHAUF-
FEURS, WAREHOUSEMEN AND
HELPERS OF AMERICA, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

MEENAN OIL CO., Inc., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

Nos. 208, 209, Docket 25306, 25307.

United States Court of Appeals
Second Circuit.

Argued April 17, 1959.

Decided May 14, 1959.

---

Samuel G. Cohen, New York City (Jack Last, New York City, of counsel), for petitioner Local 553.

Hannon, Evans, Nolan & Halpin, New York City (Jerome T. Nolan, New York City, of counsel), for petitioner Meenan Oil Co., Inc.

Jerome D. Fenton, Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Frederick U. Reel and James C. Paras, Attys., Washington, D. C., for respondent.

Before CLARK, Chief Judge, and SWAN and MOORE, Circuit Judges.

SWAN, Circuit Judge.

These cases are before us upon separate petitions of Local 553, hereafter referred to as the Union, and Meenan Oil Co., Inc., which employs members of the Union. It will be referred to as the Company. The petitioners seek to have set aside a decision and order of the National Labor Relations Board which holds that the Union and the Company have engaged in unfair labor practices and orders them to take remedial action. The Board's answer to the petitions requests the court to enforce its order.

The Board found that the Company and the Union violated section 8(a)(1), (2) and (3) and section 8(b)(1)(A) and (2) of the Act, 29 U.S.C.A. § 158, by entering into, maintaining and enforcing their 1956 collective bargaining contract which the Board held delegated to the Union final control over the employees' seniority status. The Board further found that the Union used its control over seniority to cause the Company to discriminate against an employee named Wolny, and that both petitioners thereby violated the same provisions of the Act.

The Company is engaged in the business of selling fuel oil. Since the volume of its business is dependent upon the demand for heating oil, it is inherently a seasonal business which reaches its peak during the months of October to May. In this period it employs the maximum number of drivers. Only a limited number of them are able to maintain year-round employment with the Company. Seniority controls the retention of jobs during the slack summer period, as well as the allocation of driving assignments and shift preferentials during the entire year. The collective bargaining agreement contains the seniority provision set forth in the margin.[1] The Board

---

1. "Section 10. Dealers with more than one depot will establish a seniority list for each classification in each depot. It is understood and agreed, however, that men formerly employed in a depot either temporarily or permanently closed, must be placed at the end or other single steady list.

It is further understood and agreed that during the dull season of the year preference shall be given to the chauffeurs on the seniority list and that the Shop Steward shall be the No. 1 man on that list, except as provided in Section 2, paragraph 1.

*During the slack season, April 15 to October 15, any employee who accord-ing to seniority would not have steady employment shall be entitled to a leave of absence and maintain his full seniority rights during that period. Any man so described must report to the Shop Steward not later than 8 A.M. on October 15 and sign the seniority roster in order to protect his seniority, and the Employer agrees to accept the certification of said Shop Steward as to availability of such men when called by the Employer. If October 15 falls on a Saturday or Sunday, the reporting day shall be the next work day. Any man failing to report as above specified shall forfeit all seniority rights.*

**554**

takes the position that this provision delegates to the Union final control over the seniority status of the Company's drivers. It relies upon N.L.R.B. v. International Brotherhood of Teamsters, etc., 8 Cir., 225 F.2d 343, 347 which held that delegation to a union of complete control over seniority is violative of the Act "because it tends to encourage membership in a Union." In accord is N.L.R.B. v. Dallas General Drivers, etc., 5 Cir., 228 F.2d 702, 706. The petitioners apparently concede the correctness of these decisions but maintain that the seniority provisions considered in them differ from the provision under consideration in the case at bar because here the contract provision merely vests the shop steward with ministerial functions to be performed according to an objective standard.

We disagree with the Board's interpretation of section 10 of the contract and agree with that advanced by the petitioners. Concededly the Company's business is seasonal. During the slack season many drivers of its trucks are laid off and take other employment. Some may never return; others will return to the Company's employ and do not wish to lose their seniority status by reason of the summer lay-off. To the employer it is important to know by October 15 how many may be expected to return and be available for work. Section 10 of the contract was devised to meet the needs of both the employees and the Company. It requires the drivers who have been laid off during the summer to sign the "seniority roster" by 8 A.M. on October 15 and requires the Company to "accept the certification of said shop steward as to the availability of such men when called by the employer." The certification is purely a ministerial act to be performed according to an objective standard. The shop steward is vested with no discretion to determine whose names may appear on the list or the order in which they shall be rehired by the Company. He merely certifies that such men

as have signed the seniority roster have done so by 8 A.M. on October 15 and are therefore available for work when and if the employer seeks to hire additional drivers. This seems to us to be an entirely reasonable provision to include in a collective bargaining contract.

■ The Board further argues that the practice as revealed by the record establishes that the Company in fact surrendered seniority control to the Union. This is based on the Conklin and Wolny episodes. Conklin's position on the list certified by the shop steward was below that of other men to whom he was senior. Wolny's name, although he showed up at the plant on the morning of October 15, was not on the list. Superintendent Slater of the Company questioned shop steward Johnson as to these matters. He explained that Conklin had signed late and that Wolny had not signed at all. These explanations and Mr. Slater's testimony refute in our opinion the Board's contention that the Company in fact surrendered seniority control to the Union. Nor can we accept the argument that application of the seniority provision to Wolny was discriminatory. While working for another employer Wolny had disregarded a strike-call and the Union had imposed a fine of $500 which he refused to pay. Johnson, who preferred the charges that led to the fine, had developed such animus against Wolny that possibly he might have refused to certify Wolny's name had he signed the seniority roster. In an affidavit Johnson stated: "If Wolny would have demanded to sign the seniority list, I would not have permitted him to sign until I had called the Union at about 9 A.M. to get advise [sic], in view of my understanding that he quit the past season." Much was made of this statement by the Trial Examiner in his Intermediate Report. We regard the statement as irrelevant. The fact that Johnson might have discriminated against Wolny is no evidence that he or the Union committed any discriminatory

: No Shop Steward has the right to tie up a bar unless authorized by the delegate, who so authorized in full accord-

ance with the terms and provisions of this contract." (Emphasis supplied.)

act. Johnson's only act, namely, omitting Wolny's name from the roster was ministerial in character and in strict accordance with the seniority provision of the contract, since Wolny had not signed.

For the foregoing reasons the petitions are granted and the Board's order is set aside.